## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

\* \* \* \* \*

MINDY CALKINS, an individual; ALI AL-FARAJ, an individual; and KERRY MARK PROPERTIES, LLC, a Michigan limited liability company, for themselves and all those similarly situated,

Plaintiffs,

v.

KENT COUNTY, a Government Unit; PETER MACGREGOR in his individual and official capacity; KENNETH D. PARRISH, in his individual capacity; ALGER COUNTY, a Government Unit; PAMELA JOHNSON, in her individual and official capacity; ALLEGAN COUNTY, a Government Unit; SALLY L. BROOKS, in her individual and official capacity; ANTRIM COUNTY, a Government Unit; SHERRY A. COMBEN, in her individual and official capacity; BARAGA COUNTY, a Government Unit; JILL C. TOLLEFSON, in her individual and official capacity; ANNE T. KOSKI, in her individual capacity; BARRY COUNTY, a Government Unit; SUSAN VANDERCAR, in her individual and official capacity; BENZIE COUNTY, a Government Unit; MICHELLE THOMPSON, in her individual and official capacity; BERRIEN COUNTY, a Government Unit; SHELLY WEICH, in her individual and official capacity; BRET E. WITKOWSKI, in his individual capacity; CALHOUN COUNTY, a Government Unit; BRIAN W. WENSAUER, in his individual and official capacity; CASS COUNTY, a Government Unit; HOPE ANDERSON, in her individual and official capacity; CHIPPEWA COUNTY, a Government Unit; CARMEN FAZZARI, , in her individual and official capacity; DELTA COUNTY, a Government Unit; SHERRY GODFREY, in her individual and official capacity; DICKINSON COUNTY, a Government Unit; LORNA CAREY, in her individual and official capacity; EATON COUNTY, a Government Unit; ROBERT ROBINSON, in his individual and

Case No. 21-cv-_____

Hon. _____

## COMPLAINT

## (JURY DEMAND)

## \*\* CLASS ACTION \*\*

official capacity; EMMET COUNTY, a
Government Unit; MARY MITCHELL, in her
individual and official capacity; GOGEBIC
COUNTY, a Government Unit; LISA HEWITT, in
her individual and official capacity; GRAND
TRAVERSE COUNTY, a Government Unit;
HEIDI SCHEPPE, in her individual and official
capacity; HILLSDALE COUNTY, a Government
Unit; STEPHANIE KYSER, in her individual and
official capacity; HOUGHTON COUNTY, a
Government Unit; LISA MATTILA, in her
individual and official capacity; INGHAM
COUNTY, a Government Unit; ERIC
SCHERTZING, in his individual and official
capacity; IONIA COUNTY, a Government Unit;
JUDITH A. CLARK, in her individual and official
capacity; IRON COUNTY, a Government Unit;
MELANIE CAMPS, in her individual and official
capacity; KALAMAZOO COUNTY, a
Government Unit; THOMAS WHITENER, in his
individual and official capacity; MARY
BALKEMA, in her individual capacity;
KALKASKA COUNTY, a Government Unit;
VALERIE THORNBURG, in her individual and
official capacity; LAKE COUNTY, a Government
Unit; KELLIE ALLEN, in her individual and
official capacity; BRENDA L. KUTCHINSKI, in
her individual capacity; LEELANAU COUNTY, a
Government Unit; JOHN GALLAGHER, III, in his
individual and official capacity; MACKINAC
COUNTY, a Government Unit; JENNIFER
GOUDREAU, in her individual and official
capacity; MANISTEE COUNTY, a Government
Unit; RACHEL NELSON, in her individual and
official capacity; MARQUETTE COUNTY, a
Government Unit; NICHOLAS BENSON, in his
individual and official capacity; MASON
COUNTY, a Government Unit; ANDREW R.
KMEETZ, IV, in his individual and official
capacity; MENOMINEE COUNTY, a Government
Unit; BARBARA A. PARRETT, in her individual
and official capacity; MISSAUKEE COUNTY, a
Government Unit; LORI COX, in her individual and
official capacity; MONTCALM COUNTY, a
Government Unit; JOANNE VUKIN, in her
individual and official capacity; MUSKEGON
COUNTY, a Government Unit; TONY
MOULATSIOTIS, in his individual and official

2

capacity; NEWAYGO COUNTY, a Government
Unit; HOLLY MOON, in her individual and official
capacity; OCEANA COUNTY, a Government
Unit; MARY LOU PHILLIPS, in her individual and
official capacity; ONTONAGON COUNTY, a
Government Unit; JEANNE M. POLLARD, in her
individual and official capacity; OSCEOLA
COUNTY, a Government Unit; TONIA
HARTLINE, in her individual and official capacity;
LORI LEUDEMAN, in her individual capacity;
OTTAWA COUNTY, a Government Unit;
AMANDA PRICE, in her individual and official
capacity; ST. JOSEPH COUNTY, a Government
Unit; KATHY HUMPHRIES, in her individual and
official capacity; JUDITH L. RATERING, in her
individual capacity; SCHOOLCRAFT COUNTY, a
Government Unit; JULIE ROSCIOLI, in her
individual and official capacity; VAN BUREN
COUNTY, a Government Unit; TRISHA
NESBITT, in her individual and official capacity;
WEXFORD COUNTY, a Government Unit; and
KRISTI NOTTINGHAM, in her individual and
official capacity,

           Defendants.

_____/

## COMPLAINT

Plaintiffs MINDY CALKINS, ALI AL-FARAJ, and KERRY MARK PROPERTIES,

LLC, both individually and on behalf of a class of similarly situated individuals and entities, by

and through counsel, for their Complaint state as follows:

## PARTIES

1.     Plaintiff Mindy Calkins is a resident of Kent County, who owned real property in

Kent County, Michigan.

2.     Plaintiff Ali Al-Faraj presently resides outside of Michigan and owned real property

in Kalamazoo County, Michigan.

3

3.     Plaintiff Kerry Mark Properties, LLC, (hereinafter "Kerry Mark Properties") is a Michigan limited liability company located in Van Buren County, Michigan, which owned real property in Van Buren County, Michigan.

4.     Defendants Counties of Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Marquette, Mason, Menominee, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Ontonagon, Osceola, Ottawa, Saint Joseph, Schoolcraft, Van Buren, and Wexford are governmental units in the State of Michigan that govern their individual counties (individually each a "County" and collectively, "Counties").

5.     The individually listed Defendants ("Treasurers") are or were public officials serving as county treasurers for their respective county and are sued in their personal, individual capacities.

6.     The individually listed Defendants, except Anne T. Koski, Bret E. Witkowski, Ann Vrablic, Mary Balkema, Kenneth D. Parrish, Brenda L. Kutchinski, Lori Leademan, and Judith L. Ratering, are current, office-holding public officials serving as county treasurers for their respective county and are also sued in their official capacities.

7.     Each county and its treasurer chose to be a Foreclosing Governmental Unit ("FGU") under MCL § 211.78, thus making affirmative, voluntary, and discretionary decisions for each respective county based on its own county policy.

8.     Prior to the tax foreclosures referenced below, Plaintiffs were the owners of real property commonly known as follows (individually "Subject Property" and collectively "Subject Properties"):

4

a.  Plaintiff Mindy Calkins was the owner of 10080 Rentsman Street NE and 10250 Rentsman Street NE in Cedar Springs, Kent County, Michigan (collectively hereinafter the "Calkins Property");

b.  Plaintiff Ali Al-Faraj was the owner of 1237 E. G Avenue in Kalamazoo, Kalamazoo County, Michigan (hereinafter the "Al-Faraj Property"); and

c.  Plaintiff Kerry Mark Properties, LLC was the owner of 410 Phoenix Street in South Haven, Van Buren County, Michigan (hereinafter the "Kerry Mark Property").

9.  Each class member similarly owned property in one or more of the Counties.

## JURISDICTION AND VENUE

10.  This is a civil action seeking unpaid "just compensation" and other monetary damages against Defendants for violations of Article 10 of the Michigan Constitution and of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

11.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights cases); 28 U.S.C. § 2201 (declaratory judgments via the Declaratory Judgment Act); and 28 U.S.C. § 1367 (supplemental state law claims).

12.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since Defendants, individually and collectively, conduct or have conducted business in the Western District of Michigan and the properties involved (hereinafter the "Subject Properties") are situated within the Western District of Michigan.

## THE TAX FORECLOSURES

13.  Defendants caused Plaintiffs' interests in the Subject Properties, and class members' interests in their Subject Properties, to be foreclosed under Michigan's General Property Tax Act ("GPTA") as a result of delinquent taxes, unpaid assessments, fees, penalties and/or interest (individually "Tax Foreclosure" and collectively "Tax Foreclosures").

14.     Upon information and belief, at the time of the Tax Foreclosure, Plaintiffs and class members owed their respective County some small amount for delinquent taxes and/or assessments, interest, penalties, and fees, reasonably related to the foreclosure and sale of the Subject Properties (hereinafter the "Tax Delinquency" or "Tax Delinquencies").

15.     Following the Tax Foreclosure, the Treasurer, on behalf of the respective County, directed, implemented, or gave instructions that the Subject Properties be sold at auction or the Subject Properties be conveyed to the State of Michigan, the County, township, village, city or governmental entity ("Tax Sale" or "Tax Sales").

16.     Subsequent to the Tax Foreclosure, the Treasurer, on behalf of the respective County, retained ownership or deeded the Subject Property to a third party.

17.     Upon information and belief, the Treasurer on behalf of the respective County, received proceeds from the Tax Sales.

18.     Upon information and belief, the amounts received by the Treasurer on behalf of the respective County at the Tax Sales exceeded the Tax Delinquencies (hereinafter the "Surplus Proceeds").

19.     Regarding the Calkins Property:

    a.  On April 26, 2017, Defendant Kenneth D. Parrish seized the ownership interest in the Calkins Property for and on behalf of Kent County as its then-duly elected treasurer, as reflected in the attached **Exhibit 1;**

    b.  As of the date of the Tax Foreclosure, the Calkins Property accrued a Tax Delinquency of approximately $8,100.00;

    c.  As of the date of the Tax Foreclosure, the Calkins Property had a State Equalized Value of $67,700.00.  Because the fair market value of a Subject Property is at least twice the amount of its State Equalized Value, this means that the Defendants

would have known or should have known that the Subject Property had a fair market value of at least $135,400.00;

d. On behalf of Kent County, Defendant Kenneth D. Parrish sold the Calkins Property at a Tax Sale and conveyed the Calkins Property on or about September 7, 2017, for $122,500.00;

e. Given that the minimum fair market value of the Calkins Property was at least $135,400.00 Plaintiff Calkins had at least $127,300.00 in equity in the Calkins Property (hereinafter "Excess Proceeds");

f. The Surplus Proceeds in the Calkins Property were approximately $114,400.00, while the Excess Proceeds in the Calkins Property was $127,300.00.

20. Regarding the Al-Faraj Property:

a. May 29, 2015, Defendant Mary Balkema seized ownership interest in the Al-Faraj Property for and on behalf of Kalamazoo County as its then-duly elected treasurer, as provided in the attached **Exhibit 2;**

b. As of the date of the Tax Foreclosure, the Al-Faraj Property accrued a Tax Delinquency of approximately $4,100.00;

c. As of the date of the Tax Foreclosure, the Al-Faraj Property had a State Equalized Value of $17,704.00. Because the fair market value of a Subject Property is at least twice the amount of its State Equalized Value, this means that the Defendants would have known or should have known that said Subject Property had a fair market value of at least $35,408.00;

d. On behalf of Kalamazoo County, Defendant Mary Balkema sold the Al-Faraj Property at a Tax Sale and conveyed the Al-Faraj Property on or about August 19, 2015, for $26,803.29;

e.  Given that the minimum fair market value of the Al-Faraj Property was at least $35,408.00, and given that the Tax Delinquency was $4,100.00, Plaintiff Ali Al-Faraj had at least $31,308.00 in the Al-Faraj Property;

f.  The Surplus Proceeds in the Al-Faraj Property were approximately $22,703.29, while the Excess Proceeds in the Al-Faraj Property was $31,308.00.

21.  Regarding the Kerry Mark Property:

a.  On April 4, 2018, Defendant Trisha Nesbitt seized ownership of the Kerry Mark Property for and on behalf of Van Buren County as its duly elected treasurer, as reflected in the attached **Exhibit 3**.

b.  As of the date of the Tax Foreclosure, the Kerry Mark Property accrued a Tax Delinquency of approximately $32,000.00.

c.  As of the date of the Tax Foreclosure, the Kerry Mark Property had a State Equalized Value of $181,800.00.  Because the fair market value of a Subject Property is at least twice the amount of its State Equalized Value, this means that the Defendants would have known or should have known that said properties had a fair market value of at least $363,600.00.

d.  On behalf of Van Buren County, Defendant Trisha Nesbitt sold the Kerry Mark Property at a Tax Sale and conveyed the Kerry Mark Property on or about September 7, 2018, for $267,000.00;

e.  Given that the minimum fair market value of the Kerry Mark Property was at least $363,600.00, and given that the Tax Delinquency was $32,000.00, Plaintiff Kerry Mark Properties had at least $331,600.00 in the Kerry Mark Property;

f. The Surplus Proceeds in the Kerry Mark Property were approximately $Tax Delinquency and the total for what the County received was $235,000.00, while the Excess Proceeds in the Kerry Mark Property was $331,600.00.

22. Defendants seized and retained the Surplus Proceeds.

23. The Tax Foreclosure of the Subject Property was a voluntary activity undertaken by the Defendants as clarified in MCL § 211.78(6).

24. Defendants' actions, as described in this Complaint, constitute a voluntary practice, policy, or custom of the Defendants.

25. Defendants' actions, as described herein, were undertaken pursuant to an official County policy, thereby permitting Plaintiffs' claims for liability against governmental units and others claiming immunity as set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978) and its progeny.

26. Upon information and belief, the Surplus Proceeds were deposited into the respective Counties' General Fund account and/or delinquent tax revolving fund account.

27. Upon information and belief, Defendants have derived investment income from the retention of the Surplus Proceeds.

28. Defendants' retention of Plaintiffs' and class members' Surplus Proceeds is done so that the Counties can use the Surplus Proceeds for each Counties' own use and for the purpose of earning interest or investment income.

29. The earning of interest or investment income is an activity that is conducted primarily for the purpose of producing a pecuniary profit for the County.

30. Despite the Tax Foreclosure of Plaintiffs' and class members' real property, Plaintiffs and class members were entitled to have the Subject Properties sold for a fair market

9

value generating, producing and unlocking proceeds exceeding the amount owed on the Delinquent Taxes ("Excess Proceeds" or "Equity").

31.     Plaintiffs and class members maintain a common law right to the Surplus Proceeds and Excess Proceeds.

32.     Plaintiffs and class members have a vested right and interest in the Surplus Proceeds and Equity or Excess Proceeds.

33.     The Surplus Proceeds and Excess Proceeds (or Equity) are property rights by Plaintiffs and class members.

34.     Pursuant to the decision of the Michigan Supreme Court in *Rafaeli LLC v Oakland County*, __Mich __, __NW2d__ (2020), Plaintiffs and class members are entitled to the Surplus Proceeds.

35.     The Counties and Treasurers seized equity and personal property from the Plaintiffs and class members by Tax Foreclosing the Subject Properties, and disposing of the Subject Properties at Tax Sales for an amount much lower than their fair market value, and failing to return any of the Excess Proceeds or Surplus Proceeds to Plaintiffs and class members.

36.     The Counties and Treasurers took or destroyed all the Plaintiffs' and class members' Excess Proceeds and Surplus Proceeds in the Subject Properties.

37.     The Treasurers and the Counties refused and refuse to pay just compensation for Plaintiffs' and class members' Excess Proceeds and the Surplus Proceeds in the Subject Properties.

38.     Neither the Counties nor the Treasurers initiated any condemnation action, process or procedure for the taking or compensation of Plaintiffs' and class members' Excess Proceeds and Surplus Proceeds in the Subject Properties.

39.     Defendants have, in an identical fashion as outlined above, seized and taken Excess Proceeds and Surplus Proceeds from other similarly situated individual within their counties.

40.     Moreover, the other named Defendants on behalf of themselves and in their individual and representative capacities carried out these practice in their respective jurisdictions.

41.     Neither the Counties nor the Treasurers afforded the Plaintiffs and class members any process, plan, or legal mechanism to seek or achieve the return the or Surplus Proceeds they received.

42.     Plaintiffs and class members are entitled to immediate turnover of the Surplus Proceeds and/or Excess Proceeds, together with the earnings or interest earned thereon.

43.     After issuance of the *Rafaeli* decision, Defendants' retention of Plaintiffs' and class members' Excess Proceeds or Surplus Proceeds was clearly not within the scope of activity authorized by the State or Federal Constitutions, statute, local charter charger or ordinance, or other law.

44.     Defendants' actions were undertaken in willful and wonton disregard of Plaintiffs' and class members' property rights.

45.     Defendants' retention of Plaintiffs' and class members' property is outside of the scope of governmental immunity.

46.     At the time of the taking, Defendants had not afforded Plaintiffs and class members any mechanism or process to seek or obtain just compensation.

## CLASS ALLEGATIONS

47.     This action is brought by Plaintiffs individually and pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the owners of real property in the counties of Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Marquette, Mason, Menominee, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Ontonagon, Osceola, Ottawa, Saint Joseph,

Schoolcraft, Van Buren, and Wexford during the relevant statutorily limited time period who were subjected to the unconstitutional processes that resulted in the taking and/or unconstitutional forfeiture of their Surplus Proceeds or Equity, but excluding those who have separately filed their own personal post-Tax Foreclosure legal actions in state or federal courts.

48.     The proposed class consists of all the owners of real property in the following counties, whose real property, during the relevant time period, was seized through a real property tax foreclosure action, which was worth more and/or which was disposed of through a Tax Sale and who was not refunded the value of the real property in excess of the delinquent taxes owed: Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Marquette, Mason, Mecosta, Menominee, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Ontonagon, Osceola, Ottawa, Saint Joseph, Schoolcraft, Van Buren, and Wexford.

49.     The number of persons who have been injured by the practices discussed herein is sufficiently numerous to make class action the most practical method to secure redress for the injuries sustained and to provide class wide equitable relief.

50.     Plaintiffs' claims are common to, and typical of, those raised by the Class Members they seek to represent, including:

a.      Whether the Counties and their respective Treasurers are and have been voluntarily exercising discretion to administer MCL § 211.78 in an unconstitutional or otherwise illegal manner, or whether the Counties and their respective Treasurers are and have been acting to voluntarily enforce an unconstitutional statute that each has willingly assumed to undertake pursuant to discretion via MCL § 211.78;

b.  Whether each Class Member's Subject Property, prior to Tax Foreclosure, was worth more or was sold for more than the Tax Delinquency;

c.  Whether each Class Member's Subject Property had a fair market value greater than the Tax Delinquency owed for that Subject Property;

d.  Whether the Counties and their respective Treasurers destroyed or took Surplus Proceeds when selling each Class Member's Subject Property at a reduced price that was below fair market value price;

e.  Whether the Counties and their respective Treasurers then kept the Class Member's Surplus Proceeds for the benefit of their respective Counties; and

f.  Whether the Counties and their respective Treasurers failed to pay just compensation to Class Members, failed to initiate any form of condemnation proceedings to Class Members, or failed to have or undertake a process to return the Surplus Proceeds to Class Members.

51.  There are clear questions of law raised by the named Plaintiffs' claims common to, and typical of, those raised by the Class they seek to represent, including:

a.  whether MCL § 211.78m forbids Defendants from returning Surplus Proceeds to Class Members;

b.  whether, if MCL § 211.78m does entail such a prohibition, the statute is facially unconstitutional;

c.  whether the Defendants committed an unconstitutional taking by refusing to pay just compensation when seizing the Surplus Proceeds and/or Equity in each Class Member's Subject Property; and whether the Defendants have appropriated Class Member's property in the form of Surplus Proceeds and/or Equity without the payment of just compensation in violation of the Fifth and Fourteenth Amendments

to the United States Constitution and Article X, Section 2 of the Michigan Constitution;

d.      whether the Defendants committed an inverse condemnation by destroying Class Member's Equity in their Subject Properties via the seizure process and/or the later Tax Sale of Subject Property at a reduced, below fair market price and then retaining the Class Member's Surplus Proceeds;

e.      if deemed a forfeiture, whether the Defendants violated the Excessive Fines Clause of the United States Constitution, by retaining the Class Member's Surplus Proceeds or Excess Proceeds.

f.      whether the Class Members had a protected property interest in their Subject Property's Surplus Proceeds and/or Excess Proceeds;

g.      whether the Defendants deprived the Class Members of any opportunity to seek the return of their Surplus Proceeds and Excess Proceeds so as to deprive the Class Members of their procedural due process rights;

h.      whether Defendants acted arbitrarily and capriciously, and/or in a manner that shocks the conscience, in seizing the Class Members' Surplus Proceeds;

i.      whether Defendants violated the Class Members' substantive due process rights in seizing the Class Members' Surplus Proceeds; and

j.      whether the Defendants have been unjustly enriched by their retention of Class Members' Surplus Proceeds.

52.     The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class Members.

53.     Plaintiffs, as Class representatives, will fairly and adequately protect the interests of the Class Members and will vigorously prosecute the suit on behalf of the Class; and are represented by highly experienced counsel.

54.     The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

55.     Defendants have acted, failed to act, and/or are continuing to act on grounds generally against the interest of Plaintiffs and all Class Members in the same manner.

56.     The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class Members.

57.     The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

## COUNT I
## INVERSE CONDEMNATION
### (AGAINST DEFENDANT COUNTIES AND TREASURERS IN THEIR OFFICIAL CAPACITIES)

58.     Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

59.     Defendants' retention of Plaintiffs' and the Class Members' Surplus Proceeds and/or Excess Proceeds constitutes a taking under Article X, § 2 of Michigan's 1963 Constitution as well as the United States Constitution.

60.     Defendants have taken Plaintiffs' and the Class Members' property interests in the form of – that is, the value of their Subject Properties to the extent they exceed the Tax

Delinquency of the Subject Properties – and have appropriated the property for public use without the payment of just compensation.

61.     Defendants' retention of earnings or interest on the Surplus Proceeds constitutes another taking under Article X, § 2 of Michigan's 1963 Constitution as well as the United States Constitution

62.     Defendants have done so without using any direct condemnation processes prior to the taking, including those Defendants could have utilized as outlined under the Uniform Condemnation Procedures Act, MCL § 213.51, et seq.

63.     Defendants did not provide Plaintiffs and the Class Members any opportunity to claim the Surplus Proceeds and Equity/or Excess Proceeds in their Subject Properties after the seizure and/or later Tax Sale of their respective Subject Properties, nor do Defendants provide or have a process at the time of the taking for Plaintiffs and the Class Members to claim compensation at the time the Defendants seized Plaintiffs' and Class Members' interest to their taken property interests.

64.     Defendants have not paid just compensation.

65.     Defendants will not now pay just compensation.

66.     Defendants do not intend to pay just compensation in the future.

67.     An inverse condemnation with damages has occurred.

68.     Plaintiffs and the Class Members have been injured and have suffered damages.

69.     Plaintiffs and the Class Members are entitled to maintain this action as an action for inverse condemnation (see *Electro-Tech, Inc v. HF Campbell Co*, 433 Mich. 57; 445 N.W.2d 61 (1989)).

**COUNT II**
**TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION**
**"ARISING DIRECTLY" UNDER THE FIFTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

70.     Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

71.     Plaintiffs and the Class Members make this claim directly under the Fifth Amendment.

72.     The Fourteenth Amendment has made the Fifth Amendment directly applicable to the States.

73.     The taking of Plaintiffs' and the Class Members property or Excess Proceeds or Surplus Proceeds without just compensation is in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America.

74.     By Defendants refusal to take any action for or causing the payment of just compensation at time of the taking, Defendants have deprived Plaintiffs and the Class Members of their constitutional right to just compensation at the time of the taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and thus the violation can be remedied by a direct claim under the Fifth Amendment.

75.     Plaintiffs are entitled to interest from the time of taking until payment as part of just compensation in accordance with *Jacobs v. United States*, 290 U.S. 13 (1933): *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), and their progeny.

76.     Plaintiffs and the Class Members have been injured and have suffered damages.

**COUNT III**
**VIOLATION OF THE EIGHTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

77.     Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

78.     This Count is pled to the extent that Defendants argue or assert that Plaintiffs or any Class Member was punished with an *in-rem* civil forfeiture pursuant to the Act.

79.     The Eighth Amendment to the United States Constitution is the part of The United States Bill of Rights prohibiting the government from imposing excessive fines, which the US Supreme Court has applied to action(s) involving *in-rem* civil forfeitures.

80.     The Fourteenth Amendment applies the Eighth Amendment to states and state actors such as Defendants.

81.     By imposing and retaining an excessive fine in the form of the in-rem civil forfeiture of value of the Equity interest in the Subject Properties in excess of the Tax Delinquency, Plaintiffs' and the Class Members' Eighth Amendment rights have been violated. *See Austin v. United States*, 509 U.S. 602 (1993).

82.     Defendants' retention of the Surplus Proceeds and/or Excess Proceeds, which by definition is exclusive of the Tax Delinquency, is punitive and not remedial.

83.     The conduct of Defendants was reckless and undertaken with complete indifference to Plaintiffs' and the Class Members' federal rights to be free from violations of the Eighth Amendment to the United States Constitution.

84.     Said actions violate the Eighth Amendment to the United States Constitution and are remedied by a money judgment against Defendants pursuant to 42 U.S.C. § 1983 and § 1988.

85.     Plaintiff and the Class Members have been injured and have suffered damages.

**COUNT IV**
**42 USC § 1983**
**TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION**
**(AGAINST ALL DEFENDANTS)**

86.     Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

87.     The Fifth Amendment, made applicable to the States via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking by Defendants. *See Knick v. Twp. of Scott*, 588 U.S. ___, 139 S. Ct. (2019).

88.     Defendants have taken Plaintiffs' and the Class Members' property interests and have appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

89.     Defendants have refused to take any action for the payment of just compensation at the time of the taking, Defendants have deprived Plaintiffs and the Class Members of their constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

90.     The taking of Plaintiffs' and the Class Members' property by Defendants also violated, and continues to violate, 42 USC § 1983 and 42 USC § 1988.

91.     Plaintiffs and the Class Members have been injured and suffered damages by Defendants' acts and actions and Plaintiffs and the Class Members are entitled to the relief provided in 42 USC § 1983 and 42 USC § 1988.

### COUNT V
### 42 USC § 1983
### VIOLATION OF SUBSTANTIVE DUE PROCESS
### (AGAINST ALL DEFENDANTS)

92.     Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

93.     Pursuant to the Fourteenth Amendment, Plaintiffs and Class Members are entitled to substantive due process.

94.     Defendants taking of Plaintiffs' and the Class Members' property deprived Plaintiffs of substantive due process.

95.     Defendants' conduct in destroying and/or seizing Plaintiffs' and Class Members' Equity, and refusal to return the same, is arbitrary and/or shocks the conscience.

96.     Plaintiffs and the Class Members have been damaged as a direct and proximate result of Defendants' violations.

97.     Plaintiffs and Class Members do not have an adequate remedy at law except as asserted in this Complaint.

**COUNT VI**
**42 USC § 1983**
**VIOLATION OF PROCEDURAL DUE PROCESS**
**(AGAINST ALL DEFENDANTS)**

98.     Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

99.     Pursuant to the Fourteenth Amendment, Plaintiffs and the Class Members are entitled to procedural due process.

100.    Plaintiffs and the Class Members have a Constitutionally protected property interest in the Equity of their respective Subject Properties.

101.    At the time it took Plaintiffs' and the Class Members' property, Defendants had no method or procedure for Plaintiffs and the Class Members to secure the return their property or obtain it from the Defendants.

102.    Defendants' taking of Plaintiffs' and Class Members' Surplus Proceeds and the Class Members/or Excess  Proceeds without notice or the opportunity to be heard deprived Plaintiffs and the Class Members of procedural due process.

103.    Plaintiffs and the Class Members have been damaged as a direct and proximate result of Defendants' violations.

## COUNT VII
## UNJUST ENRICHMENT
## (AGAINST THE COUNTY DEFENDANTS)

104.  Plaintiffs and the Class Members incorporate the allegations contained in all preceding paragraphs.

105.  Defendants have unjustly been enriched by their illegal taking of Plaintiffs' and the Class Members property.

106.  Plaintiffs and Class Members do not have an adequate and complete remedy at law except as asserted in this Complaint.

107.  It is inequitable for Defendants to retain Plaintiffs' and the Class Members' property and the benefits Defendants have obtained from retaining Plaintiffs' and the Class Members' property.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs Mindy Calkins, Ali Al-Faraj, and Kerry Mark Properties, and the Class Members respectfully request this Court to:

a.  Enter an Order certifying this case as a class action;

b.  Enter an order declaring the conduct of Defendants as being unconstitutional under the federal and state constitutions, even if being undertaken consistent with the General Property Tax Act;

c.  Enter an order for any and all damages and/or compensation as is deemed proper;

d.  Enter an Order disgorging the County Defendants' proceeds from the Tax Sales of the Subject Properties to the extent that the proceeds from each such sale exceeds the Tax Delinquency for each respective Subject Property;

e.  Enter an Order disgorging the interest or money earned by the County Defendants' from retention of the proceeds from the Tax Sales of the Subject Properties to the extent

that the proceeds from each such sale exceed the Tax Delinquency for each respective

Subject Property;

f.   Enter an order for an award of interest as provided for in *Knick v. Twp of Scott*;

g.   Enter an order for any and all damages available under federal law as applicable, including but not limited to an award of nominal and punitive damages;

h.   Enter an order for an award of attorney fees and expenses pursuant to all applicable laws, rules, or statutes, and;

i.   Enter an order for all such other legal and equitable relief that the Court deems proper.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Date: January 18, 2021                    Respectfully submitted,

/s/ Donald R. Visser
Donald R. Visser (P27961)
Donovan J. Visser (P70847)
Brittany Dzuris (P81438)
VISSER AND ASSOCIATES, PLLC
2480 44th Street, Suite 150
Kentwood, MI 49512
Tel: (616) 531-9860
Fax: (616) 531-9870
don@visserlegal.com
donovan@visserlegal.com
brittany@visserlegal.com

22